UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANYALE OWENS,

    Plaintiff,

v.        Case No. 3:19-cv-1373-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).[1]  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff, appearing *pro se*, argues her case should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g), because the Administrative Law Judge (ALJ) failed to properly assess Plaintiff's subjective complaints of pain in formulating her residual functional capacity (RFC).  After considering Plaintiff's arguments, Defendant's response, and the administrative record (docs. 11-12, 18-19), I find substantial evidence supports the ALJ's decision that Plaintiff is not disabled.[2]  I affirm.

    A.  *Background*

Plaintiff Danyale Owens was born on November 3, 1983, and was 32 years old on her alleged onset date of May 5, 2016. (R. 24, 530)  She dropped out of high school in the tenth

---

[1] The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

[2] The Court construed Plaintiff's one-page memorandum opposing the Commissioner's decision (doc. 18) as also requesting additional time to supplement her arguments and granted this request (doc. 20).  Plaintiff did not file a supplemental brief.

grade but later earned both her GED and an Associate's degree in childcare management and education. (R. 530-31) She has past work experience as a custodian and cashier at Home Depot. (R. 533-34) Plaintiff alleges disability due to back and hip pain and obesity. (*See* R. 193)

Plaintiff testified she was unable to work initially due to complications from a partial hysterectomy in May 2016, and then later due to injuries she sustained after falling on a wet floor at a restaurant in May 2017. (R. 535-37) She had been working as a custodian at Home Depot when she had the emergency hysterectomy. Although she tried to return to work for months, after her surgery she could not perform all tasks the job required. (*Id.*) So, she returned to school full-time instead. (R. 537) In May 2017, shortly before her graduation from an associate's program, she applied for a job at a Krystal restaurant. While she was speaking with an employee about the process, she slipped and fell. (*Id.*) In her words, she was in school full-time and,

> graduation was right around the corner. I was actually riding my bicycle and walking to the library when I was studying to finish school, and I actually went around the corner to Crystal's to get a job. I had asked them for a conversation. Graduation right around the corner, you know – . . . and until I actually found some work in a Head Start program. I went into a place to look for a job and that's when I had a slip and fall.

(R. 535)

Plaintiff sustained back and hip injuries in that accident and ultimately underwent cervical and lumbar fusion surgeries in 2017 and 2018. (R. 532, 538) Since then, she has trouble standing and walking and uses a cane or walker. (R. 532) Regarding her daily activities, Plaintiff testified that she is "pretty much laying down. . . . majority of the time, I'm actually laying down. I do get up and try to walk or I do try to see if I can go back to work and I try to do volunteer work and see if it's okay, but I be down for like three or four

2

days after that." (R. 538)  Friends and family help with her grocery shopping. (R. 539)  She testified she can walk about a block and a half and stand for 20 to 30 minutes before the pain in her back and hip become unbearable. (R. 541)  Her medications (Gabapentin, Percocet, Duloxetine, and Oxycodone) make her drowsy and itchy so she does not like to go in public. (R. 543)  Plaintiff lives alone and is able to keep up with the basic necessities of home maintenance and self-care.

After the hearing, the ALJ found Plaintiff has the severe impairments of disorders of the spine and obesity.[3] (R. 18)  Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work "except she cannot climb or have exposure to hazards; she requires a cane to stand and to ambulate to and from the duty station." (R. 19)  The ALJ found that, with this RFC, Plaintiff is unable to perform her past relevant work but, based on the VE's testimony, could work as a call out operator, ticket taker, or document preparer. (R. 25) The Appeals Council denied review. (R. 1-6)  Plaintiff, having exhausted her administrative remedies, filed this action (doc. 1).

B.  *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from

---

[3] Plaintiff's date last insured (DLI) for DIB purposes is December 31, 2017. For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her DLI.  42 U.S.C. § 423(a)(1)(A).  Because Plaintiff's amended DLI is December 31, 2017, she must show she was disabled on or before that date.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

3

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v.*

*Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C. *Whether the ALJ properly considered Plaintiff's subjective pain complaints in assessing Plaintiff's RFC*

Construing Plaintiff's brief liberally, as the Court is required to do, Plaintiff appears to argue the ALJ did not properly consider her subjective complaints of back and hip pain when formulating her RFC (doc. 18 at 1).[4] She explains she "had major extreme surgery to my neck and my back" in 2017 and 2018 that "has caused me to suffer from extreme nerve damage, an uncomfortable adjustment[ ] from time to time during the winter time or rainy season[.]" (doc. 18 at 1) She also "suffer[s] from major arthritis issues with some days are good and some days are really bad." (*Id*.). The Commissioner retorts that medical records indicate Plaintiff recovered well from her surgeries, and the ALJ's RFC formulation is sound (doc. 19).

A claimant may establish "disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant

---

[4] Although Plaintiff was represented by counsel at her administrative hearing and before the Appeals Council, she proceeds *pro se* in her appeal to this Court. Courts hold *pro se* pleadings to a less stringent standard; therefore, I construe Plaintiff's complaint and letter brief liberally. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

seeking to establish disability through her own testimony must show: (1) evidence of an underlying condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Social Security Ruling 16-3p cautions that an ALJ's "subjective symptom evaluation is not an examination of an individual's character." *Id.* When making a symptom evaluation determination, the ALJ considers all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. §§ 404.1529, 416.929. When the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Additionally, the ALJ considers such factors as treatment history; the type, dosage, effectiveness, and side effects of any medications taken; treatment other than medications; any other measures used for relief of pain or other symptoms; any precipitating and aggravating factors; medical source opinions; statements by the claimant or others about pain and other symptoms; information about prior work; and evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 20)  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), report and recommendation adopted 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).

Here, I find that it is.  In evaluating Plaintiff's subjective complaints, the ALJ summarized Plaintiff's testimony and compared it to treatment notes from primary care doctors Vincent Galiano, M.D. and Shalaka Ghate, M.D., neurologists Christine Pierre, M.D. and Rajul Parikh, M.D., pain management doctor Vishal Patel, M.D., and orthopedists at Duval County Orthopedic Associates.  The ALJ also reviewed records from Plaintiff's emergency room visits and her CT scans and MRIs. (R. 19-24) The ALJ noted Plaintiff's testimony that, while her alleged onset date corresponds with her hysterectomy in mid-2016, most of her impairments stem from her May 2017 accident and her resulting back surgeries. (R. 20)  Plaintiff testified she lays down most of the day, walks with a cane and sometimes a walker, and uses an electric cart at the grocery store. (*Id.*)  She said her pain is so severe that when she tried to go off her pain medication for a couple of days to assess her baseline pain level, it was intolerable. (*Id.*)  Once, after she volunteered as a food server at her local church, a task that required her to stand for two hours, she was in bed for four days. (*Id.*)

But Plaintiff's medical records contrast with her testimony, as the ALJ pointed out. In January 2016 (five months before her alleged onset date), Plaintiff had a physical with Dr. Galiano and relayed that she had been in a car accident the week before and gone to the ER. (R. 262-63)  On exam, Dr. Galiano reported Plaintiff had lumbar spasms and tenderness and low back pain on her left side upon a straight leg raise.  Her left shoulder hurt, and she had headaches.  She appeared tired and uncomfortable.  Dr. Galiano ordered an MRI of Plaintiff's lumbar spine and left wrist, prescribed physical therapy three times per week, and asked her to return in two weeks. (*Id.*)  Her MRIs showed a partial ligament tear of her left wrist and a herniated disc at L4-L5. (R. 264-69)

In May 2016, Plaintiff established herself at Dr. Ghate's primary care practice. (R. 327) She described chronic back pain after falling off a curb five years earlier.  She had gone to the ER two months prior, where doctors told her she had a pinched nerve in her back and gave her a steroid shot.  Dr. Ghate assessed her with chronic low back pain and obesity, ordered labs, and referred her to a neurologist. (R. 328)  Plaintiff followed up a month later because she had abnormal lab results:  she was anemic, had elevated B12 levels, and was pre-diabetic. Dr. Ghate prescribed iron supplements, directed her to stop taking B12 supplements, and encouraged diet and exercise. (R. 323)

The next month, June 2016, Plaintiff was admitted for a four-day stay at Jacksonville Memorial Hospital for a partial hysterectomy. (R. 270-83)  Interestingly, during her pre-operative assessment, Plaintiff told Angela Martin, M.D. she was working full-time as a surgical tech (a claim she repeated two months later during a neurology appointment with Dr. Pierre). (R. 273, 289)  The procedure was without complications, and Dr. Martin directed her to follow up in two weeks.

Plaintiff went to the ER in July and again in September 2016 for flare-ups of chronic back pain that radiated to her left leg, knee, and foot. She was prescribed a course of steroids (Prednisone) and a short course of pain medication (Percocet). (R. 402-04) In between these ER visits, Plaintiff saw neurologist Dr. Pierre (in August 2016). (R. 289-91) Plaintiff reported that previous injections for pain and pain medications had not helped, although her most recent injection (perhaps the one she told Dr. Ghate about in May 2016) had helped somewhat. Dr. Pierre ordered a lumbar MRI, referred Plaintiff to physical therapy, and advised her not to lift anything over 15 pounds. (*Id.*) It does not appear Plaintiff saw Dr. Pierre again due to insurance issues.

The remainder of Plaintiff's medical care in 2016 and early 2017 was performed by Dr. Ghate. During appointments with the primary care doctor in September, October, November, and December 2016, Plaintiff's concern was her weight gain and pre-diabetic condition. (R. 315-21) Dr. Ghate prescribed the weight loss drug adipex, which had helped Plaintiff lose 40 pounds before. He wrote this in his notes following Plaintiff's November 2016 appointment:

> neuro has cleared her to get back to work and all their notes were sent to work but she states that her work needs fmla filled by pcp, i told her i will need neuro notes to fill the papers …. and at this she gets upset states 'I was never told this by your staff I have been waiting for 2 weeks to go back to work and want to return to work now' i said sorry to her about the staff not informing her about that but she will have to wait until i can read neuro notes she understood, records requested, pending.

(R. 317) At her next appointment, Plaintiff had lost five pounds. She was doing Zoomba and riding her bike three to five times a week for 30-60 minutes each time. (R. 315) In January and February 2017, Plaintiff was still exercising and had lost 10 more pounds. (R. 310-12)

9

She did not mention back pain to Dr. Ghate until March 2017, when she said it had returned. (R. 308)

With her back pain flaring up, Plaintiff treated with neurologist Rajul Parikh, M.D. in March 2017. (R. 298-300)  She described constant pain that worsened with activity.  She favored her left side, as it was more painful, and her right knee was suffering as a result.  She was not taking any pain medication and was using a heating pad.  Plaintiff relayed that her insurance company had denied the MRI Dr. Pierre ordered in August 2016, she had nerve conduction studies a year earlier but did not know the results, and she had tried physical therapy to no avail. (R. 299)  Dr. Parikh did not have imaging or test results to review but examined Plaintiff and assessed her with intervertebral disc degeneration.  He suggested more physical therapy and started Plaintiff on Gabapentin for pain. (*Id.*)

Plaintiff saw Dr. Parikh again in April 2017, one day after going to the ER for uncontrolled pain. (R. 295-97)  At the ER, she could not complete nerve conduction studies due to pain.  Doctors increased her dose of Gabapentin and prescribed a seven-day course of Hydrocodone. (R. 399)  When Dr. Parikh assessed her a day later, she had 5/5 strength in her extremities. (R. 296)  He referred her to pain management, prescribed Robaxin (for muscle spasms and pain), and urged Plaintiff to continue with Gabapentin. (*Id.*)  Plaintiff had a routine appointment with Dr. Ghate later in April 2017. (R. 306)  She was still biking and doing Zoomba three to five days a week.  Her clothes fit better.  She was not fatigued.  When Plaintiff told Dr. Ghate her neurologist had referred her to pain management, he took her off weight loss medication. (*Id.*)

With this medical history, Plaintiff slipped on a wet floor at Krystal on May 9, 2017, while applying for a job. (R. 331-40)  She went to the ER the same day with right elbow, left

shoulder, and back pain. She told doctors she did not hit her head during the fall. (R. 332) She had x-rays of her ankles, feet, hands, shoulders, right elbow, and lumbar and thoracic spine – all were within normal limits. (R. 341-63) Doctors prescribed Hydrocodone and released her the same day with instructions to follow up with her primary care doctor. Strangely, at an appointment with Dr. Ghate the next week, she told him about her fall and ER visit yet said she *had* hit her head. (R. 371)

Plaintiff was back at the ER later in May 2017 for worsening back pain. (R. 380-411) X-rays of her cervical, lumbar, and thoracic spine were all within normal limits. Doctors gave her two doses of morphine for pain. (*Id.*) During a June 2, 2017, appointment, Dr. Ghate learned of Plaintiff's most recent ER visit and referred her to pain management rather than refill her pain medications. (R. 369) So, later that same day, Plaintiff went to the ER again for neck and back pain. She told doctors she had run out of pain medications and her primary care doctor would not authorize refills. Doctors gave her a seven-day supply of valium and Percocet. (R. 408)

Plaintiff's next set of records is from Duval County Orthopedic Associates regarding her cervical discectomy fusion at C5-C6 in August 2017, and lateral lumbar intervertebral fusion at L4-L5 in April 2018.[5] (R. 416-48) Two weeks after her first back surgery, Plaintiff was doing "fairly well." (R. 416) And by October 2017, she was doing "extremely well," according to her orthopedist. (R. 418) Her extreme radiculopathy had decreased "quite a bit since surgery," and she had 5/5 strength in all muscle groups. She reported her back still hurt, but she was no longer on pain medication. (*Id.*) At a follow-up appointment in December

---

[5] Plaintiff's second back surgery occurred after her DLI.

11

2017, her neck pain was much better but her back pain was worsening and radiating down her left leg. (R. 421)  She decided to proceed with L4-L5 fusion in April 2018. (R. 422)

Treatment notes following her April 2018 surgery show Plaintiff was "improving every week." (R. 423)  In June 2018, she went to the ER for pain, but an MRI revealed "no evidence of any problems.  Hardware is in place and looks great." (R. 427)  She was again referred to pain management.  Notes from pain management from June through November 2018 show that Dr. Patel consistently prescribed Plaintiff Percocet, Gabapentin, Duloxetine, Ibuprofen, and Tizanidine, and Plaintiff said this controlled her pain. (R. 485-96)  Plaintiff had full range of motion in her cervical spine in September 2018, 5/5 strength in all muscle groups, and was encouraged to increase her activity by returning to her cycling program and exercise classes. (R. 423)  Her lumbar spine had a 25% reduced range of motion.  She was encouraged to stop using her back brace.

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard.  *See Holt*, 921 F.2d at 1221.  The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective pain complaints.  *Foote*, 67 F.3d at 1561-62.  In November 2016, Plaintiff told Dr. Ghate that her neurologist cleared her to return to work, and she said she was ready to do so.  Treatment notes after her May 2017 slip and fall at Krystal confirm her back pain but also show she was encouraged to exercise, had full strength and close to full range of motion, and had x-rays that were within normal limits.  Plaintiff improved steadily after her back surgeries, and there was no evidence of hardware failure; in fact, it "looked great."  To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the

Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

Construing Plaintiff's brief and complaint liberally, she also suggests that substantial evidence does not support the ALJ's RFC determination that she can perform a limited range of light work. A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

Plaintiff does not offer any specific argument undermining the ALJ's RFC determination. In formulating Plaintiff's RFC, the ALJ relied on treatment records from her primary care doctors, neurologists, orthopedists, pain management doctors, and ER attendants as well as x-rays and MRIs (all summarized above). In particular, Dr. Ghate's

notes indicate Plaintiff was cleared to return to work (and wanted to return to work); Plaintiff was exercising three to five days per week for up to an hour every time; x-rays of her chest, pelvis, lumbar and thoracic spine, ankles, feet, right elbow, right forearm, right hand, and left shoulder were within normal limits after an extensive work up in May 2017; and she was making good progress after her back surgeries.  Considering this – and that Plaintiff points to no evidence to the contrary – there is substantial evidentiary support of the ALJ's determination that Plaintiff can return to light work with some limitations.

    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The Commissioner's decision is AFFIRMED.

    (2) The Clerk of Court is directed to enter judgment for the Commissioner and close the case.

DONE and ORDERED in Tampa, Florida on February 19, 2021.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE